UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| DAVID LEE YOCOM et al., | Case No.: 3:22-cv-00839-BEN-BLM |
|---|---|
| Plaintiffs, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES et al., | **[ECF No. 4]** |
| Defendants. | |

I.   **INTRODUCTION**

Plaintiffs David Lee Yocom ("David") and Duc Hua Yocom ("Duc") (collectively, the "Yocoms") filed suit against Defendants United States Citizenship and Immigration Services ("USCIS"), Madeline Kristoff in her official capacity as San Diego Field Office Director of USCIS, the Board of Immigration Appeals ("BIA"), and Merrick B. Garland (collectively, the "Government"). ECF No. 1. Before the Court is the Government's Motion to Dismiss. The Motion was submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure. *See* ECF No. 9. After considering the papers submitted, supporting documentation, and applicable law, the Court **GRANTS** the Motion to Dismiss. For the reasons set forth below, the Complaint is **DISMISSED** in its entirety, *with prejudice*.

## II. BACKGROUND

This case arises from the Government's denial of David Yocom's Form I-130 visa petition, seeking to classify his spouse, Duc Yocom, as a United States citizen.

### A. Statement of Relevant Facts[1]

Plaintiffs David Lee Yocom and Duc Hua Yocom are a married couple residing in Oceanside, California. ECF No. 1 ("Compl.") at 2, ¶ 4.[2] David is a citizen of the United States, and Duc is a citizen of Vietnam. *Id.* Duc entered the United States during "December 2010, after United States Customs and Border Protection officers admitted him in F-1 nonimmigrant status under 8 U.S.C. § 1101(a)(15)(F)(i), INA § 101(a)(15)(F)(i)." *Id.* at 6, ¶ 20. Duc attended community college in Auburn, Washington from December 2010 to March 2011 and "transferred to Palomar College in San Diego County, California, in April 2011." *Id.* at 6, ¶ 21. "After moving to San Diego, [Duc] started dating a woman named T.L." and in September 2012, they married. *Id.* at 7, ¶ 22. Duc described this time in his life in a declaration, stating the difficulties that came with growing up as a gay man in Vietnam, and how his "intent was not to marry [T.L.] to obtain immigration benefit . . . [and instead,] came from a place of fear and shame and [his] own effort to calm [his] family and appease them of [his] sexuality." *Id.* at 7, ¶ 23 (quoting Ex. D to Compl.).

In February 2013, T.L. filed a Form I-130 on Duc's behalf and "supported it with evidence of their marriage's bona fides," including joint tax filings, joint checking and credit card accounts, car ownership, auto insurance, and photographs. Compl. at 7–8, ¶ 24. Duc concurrently filed a Form I-485, Application to Register Permanent Resident or Adjust Status based on the Form I-130. *Id.* at 8, ¶ 24. Duc and T.L. participated in an interview at USCIS's San Diego Field Office in June 2013 and at the conclusion of the interview,

---

[1] The majority of the facts set forth are taken from the Complaint and for purposes of ruling on the Government's Motion to Dismiss, the Court assumes the truth of the allegations pled and liberally construes all allegations in favor of the non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

[2] Unless otherwise indicated, all page number references are to the ECF-generated page number contained in the header of each ECF-filed document.

T.L. withdrew the Form I-130 she had filed. *Id.* at 8, ¶ 25.

In an Acknowledgement of Withdrawal notice, USCIS's San Diego Field Officer Director stated that T.L. signed a sworn statement during the interview respecting her marriage to Duc. It said: "We are friends, we have never been intimate together. We have never lived together. We got married only to help him to get a green card. I receive no money yet, but he is gonna take me out later and pay. Nobody else know about this." *Id.* at 9, ¶ 27 (quoting Ex. D to Compl.). The withdrawal notice further "stated that T.L notified USCIS on June 5, 2013, that she wished to withdraw the visa petition." Compl. at 9, ¶ 27. Duc's Alien File also includes his own "Sworn Statement Affidavit Form, which contains the following handwritten statement: My address is 588 South Rancho Santa Fe road [sic.] San Marcos 920 [illegible] We are friends, we have never intimate together. We never live together. We got marriage [sic.] [illegible] to help me to get the green card. I received I gave no mony [sic.] and I'm gonna [sic.] take her out later and pay. Nobody esle [sic.] knows about us[.]" *Id.* at 9, ¶ 28. One week later, Duc's adjustment of status application was denied. *Id.* at 9, ¶ 29.

"[I]n February 2014, DHS officers issued Duc Yocom a putative notice to appear, charging him with removability under 8 U.S.C. § 1227(a)(1)(A), INA § 237(a)(1)(A), because at the time of adjustment of status he sought to procure a visa by fraud or willful misrepresentation of a material fact . . . ." Compl. at 9, ¶ 30. Duc and T.L. divorced in May 2014. *Id.* at 9, ¶ 31. However, in March 2015, an immigration judge administratively closed Duc's removal proceedings. *Id.* at 10, ¶ 32.

In April 2015, after completing his studies at Palomar College, Duc enrolled in a new course of study at San Diego State University. *Id.* at 10, ¶ 33. In May 2016, Duc and David married. *Id.* at 10, ¶ 34. The following November, David filed a Form I-130 on Duc's behalf. *Id.* David "proffered evidence of their marriage's bona fides, including evidence of their assets and shared health insurance and photographs." *Id.* "In August 2017, USCIS's San Diego Field Office Director sent David Yocom a Notice of Intent to Deny ("NOID")," wherein "[t]he agency requested that David Yocom provide proof of the

legal termination of his and Duc Yocom's prior marriages and 'evidence to establish that [his] intent in marriage was to establish a life together . . . .'" *Id*. at 10, ¶ 35. David responded to the NOID by submitting his October 2013 divorce decree, Duc's May 2014 divorce decree, and a copy of their application to amend their marriage license. *Id*. at 10, ¶ 36. David also submitted joint tax returns, insurance, bank accounts, credit cards, home-purchase documentation, affidavits from friends and family, and additional photographs. *Id*.

In January 2018, the Yocoms appeared for an interview at USCIS's San Diego Field Office, where Duc described how he married "T.L. to please his parents because he could not come out as gay, that his wife was unaware he was gay, and that he told her only after their interview." *Id*. at 10, ¶ 37. The Yocoms proffered additional evidence, including their marriage certificate, joint credit card and bank accounts, and additional photographs. *Id*. at 10–11, ¶ 37. In March 2018, after the interview, the San Diego Field Office Director sent David an Amended NOID, which set forth Duc and T.L.'s prior statements made during the June 2013 interview, noting they contained discrepancies and inconsistencies and lacked credibility. *Id*. at 11, ¶ 38. The Director reiterated T.L. and Duc's sworn statements cited above. *Id*. In addition, "[t]he Director determined that Duc Yocom 'did not provide any new, credible evidence to support his claim that his prior marriage was entered in good faith' because his 'testimony regarding his prior marriage during [his] interview on January 17, 2018, lacked credibility and did not overcome the evidence in the record.'" *Id*. "The Director thus proposed to deny the visa petition and granted David Yocom an opportunity 'to offer evidence in support of the petition and in opposition to the proposed denial.'" *Id*.

David responded to the Amended NOID, which included his counsel's legal brief, and Duc's sworn declaration describing Duc's intent behind marrying T.L. and the officer's conduct at the June 2013 interview. *Id*. at 11, ¶ 39. The Complaint quotes Duc's declaration describing the 2013 interview to allege that: (1) he was under a tremendous amount of pressure and stress to hide his sexuality as a gay Vietnamese man; (2) he hid his

sexuality from his family due to fears of being punished and rejected; (3) he had to find a woman to marry and start a family with to hide his sexuality and preserve his family's reputation in social circles; (4) his parents repeatedly asked him about girls and put stress on him to find a girlfriend and stop rumors that he was gay; (5) growing up gay in Vietnam was a bad and shameful experience; and (6) his intent was not to marry T.L. for immigration purposes and instead, came from the fear and shame he had in hiding his sexuality from his family. *Id.* at 7, ¶ 23. David also included copies of the sworn statement and officer's notes from the June 2013 interview, as well as "country reports and articles detailing the societal pressure to marry women—including stigma, discrimination, and verbal, emotional, and physical mistreatment—that gay Vietnamese men face." *Id.* David's counsel argued that: (1) Duc felt compelled to marry a woman to prevent his family from rejecting him; (2) the Director's reasoning that his sexuality conflicted with a good-faith marriage reflected bias rather than reasoned decision-making; (3) the Director's regulating Duc and T.L.'s lifestyles raised serious constitutional concerns; and (4) the Amended NOID contained false statements. *Id.* at 12, ¶ 40. The allegedly false statements were that "[t]he USCIS officer did not interview Duc Yocom and T.L. separately; the officer did not interview them in February 2013; Duc Yocom stated he would "pay for lunch" not pay for the marriage; the officer drafted the statements; and Duc Yocom's parents and T.L.'s child knew they had married. *Id.*

In July 2018, USCIS's San Diego Field Office Director denied David's visa petition acknowledging that David proffered evidence supporting Duc's familial and societal pressures to marry a woman and that marriages can take many forms. *Id.* at 12, ¶ 41. However, the Director "concluded this was 'not relevant' to the marriage's validity." *Id.* The Director also "determined that the prior adjudicator 'dubbed' the marriage a 'sham' because of the limited evidence and Duc Yocom's and T.L.'s admissions at the interview that they were 'only friends,' 'had never been intimate together,' 'never lived together,' and 'got married only for the green card.'" *Id.* at 13, ¶ 41. The Director concluded that Duc's declaration of intent behind his marriage to T.L. "did not overcome his and T.L.'s

statements at the interview."³ *Id.*

David "appealed the Director's decision to the BIA. In the supporting brief, his counsel made three arguments: first, USCIS relied on limited and ambiguous evidence; second, USCIS ignored evidence of Duc Yocom's motivation and intent in marrying T.L.; and third, USCIS deprived David Yocom of his procedural due process right to confront the critical witness." *Id.* at 14, ¶ 42. In October 2019, the BIA dismissed David's appeal and based the dismissal on the 2013 interview statements, saying they "'raised questions about whether their marriage was fraudulent' and that these questions constituted sufficient evidence to shift the burden of proof from the government to David Yocom, who became 'responsible for ambiguities in the record' in proving that Duc Yocom did not seek to circumvent the immigration laws based on the prior marriage." *Id.* at 14, ¶ 43.

The Yocoms allege that the BIA "did not discuss how statements that 'raised questions' constituted 'substantial and probative evidence' for 8 C.F.R. § 204.2(a)(1)(ii)'s purposes." *Id.* at 14, ¶ 44. Nor did the BIA "examine, much less discuss particularly, the evidence that David Yocom proffered or his counsel's arguments about the interview statements' unreliability and ambiguity." *Id.* at 14, ¶ 45. The Yocoms further allege that that the BIA did not address the evidence that the officer dictated T.L. and Duc's sworn statements. *Id.* at 14–15, ¶ 45. "Nor did the BIA examine the country conditions

---

³ The Complaint alleges several other conclusions by the Director, including that: the officer's interview notes corroborated Duc's statement that he and T.L. had met each other's parents over the telephone, but the notes were not relevant because they made those statements early in the interview; (2) counsel's contentions about factual errors in the Amended NOID were also irrelevant because Duc and T.L. signed sworn statements; and (3) that David Yocom proffered evidence that the word "intimate" is foreign to Vietnamese culture and neither Duc nor T.L. uses it, further supporting that the officer drafted the statements, but concluded this was irrelevant because they also admitted they were "just friends," never lived together, never consummated their marriage, and married only for a green card. Compl. at 13, ¶ 41. As such, the Director "concluded that Duc Yocom's prior marriage 'was a marriage of convenience for the sole purpose of circumventing immigration laws to obtain an immigration benefit,' such that 8 U.S.C. § 1154(c), INA § 204(c), prohibited USCIS from approving the visa petition." *Id.*

evidence's relevance to Duc Yocom's intent to establish a life with T.L." *Id*. at 15, ¶ 46. "Contrary to the Director's determining that the country conditions evidence was irrelevant, [the Yocom's allege that] . . . [Duc's] fear over social mores in Vietnam and his sexuality's impact on his family there was crucial to his intent in marrying T.L." *Id*. "And Duc Yocom's reason for marrying her—to appear normal, perhaps to 'become straight' by creating a family with her, not only despite his sexual orientation but because of it—demonstrated his intent to share a life with her, requiring that USCIS approve the petition." *Id*. Finally, the Yocoms allege that "the BIA did not examine David Yocom's due process right to cross-examine T.L. and officer who took the statements." *Id*. at 15, ¶ 47. The Yocoms allege that because Duc "refuted the statements in detail, due process requires that David Yocom have a chance to cross-examine those witnesses." *Id*.

### B. Procedural History

The Yocoms filed their Complaint on June 8, 2022, alleging violations of: (1) the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*. (the "APA"); and (2) the Due Process Clause of the Fifth Amendment of the United States Constitution. *See generally* Compl. On August 5, 2022, the Government filed the instant Motion to Dismiss. ECF No. 4 ("Motion"). The Yocoms filed an opposition and the Government replied. ECF No. 7 ("Oppo."); ECF No. 8 ("Reply").

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light

most favorable to the plaintiff. *See Manzarek*, 519 F.3d at 1031. A court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

"Generally, unless the court converts the Rule 12(b)(6) motion into a summary judgment motion, it cannot consider material outside the complaint (*e.g.*, facts presented in briefs, affidavits or discovery materials)." Phillips & Stevenson, California Practice Guide: Federal Civil Procedure Before Trial § 9:211 (The Rutter Group April 2020). Thus, in evaluating a Rule 12(b)(6) motion, review is ordinarily limited to the contents of the complaint and material properly submitted with it. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Courts may, however, consider any statements made in a pleading or motion, including concessions made in plaintiff's response to the motion to dismiss as well as in response to any other pleading or motion. Fed. R. Civ. P. 10(c). A Court may also "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States ex rel. Lazar v. S.M.R.T., LLC*, 542 F. Supp. 3d 1078, 1082 (S.D. Cal. 2021) (quoting *United States v. Ritchie*, 342 F.3d 903, 907–908 (9th Cir. 2003)).

When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Ninth Circuit has a liberal policy favoring amendments, and thus, leave to amend should be freely granted. *See, e.g.*, *DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility. *See, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

## IV. DISCUSSION

The Government argues the Complaint fails to allege "a cognizable legal theory for a due process claim, nor sufficient facts to support a cognizable legal theory." Motion at

6. The Government explains that Congress is vested with authority over immigration and there is no constitutional right for David to have Duc remain in the country. *Id.* The Government further contends that the Yocoms were provided the process they were due, and that this is reflected by the administrative record as alleged in the Complaint. *See id.* at 8. The Yocoms argue that David has both a property interest and liberty interest at stake for purposes of the Fifth Amendment. Oppo. at 7–12. The Yocoms contend that the Complaint sufficiently alleges that the Government owed them more process. *Id.* at 12–18. The Court disagrees. Regardless of David's protected interests under the Due Process Clause of the Fifth Amendment, the Yocoms were afforded sufficient process in this case. As such, the Court **GRANTS** Defendants' Motion to Dismiss.

### A. **Fifth Amendment Due Process**

The Due Process Clause of the Fifth Amendment promises that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. "The 'threshold requirement' for . . . [a plaintiff's] claim to succeed is that they have 'a liberty or property interest protected by the Constitution.'" *Zerezghi v. United States Citizenship & Immigr. Servs.*, 955 F.3d 802, 808 (9th Cir. 2020) (quoting *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994)). The Ninth Circuit has "held that a citizen petitioner has a constitutionally protected interest in the grant of an I-130 petition." *Zerezghi*, 955 F.3d at 808 (citing *Ching v. Mayorkas*, 725 F.3d 1149, 1156 (9th Cir. 2013)).

"The decision of whether to approve an I-130 visa petition is a nondiscretionary one because 'determinations that require application of law to factual determinations are nondiscretionary.'" *Ching*, 725 F.3d at 1155 (quoting *Hernandez v. Ashcroft,* 345 F.3d 824, 833–34 (9th Cir. 2003) (internal quotations and alterations omitted)). "After an investigation of the facts in each case, . . . the [Secretary of Homeland Security . . .] *shall*, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative[,] . . . *approve the petition . . . .*" *Ching*, 725 F.3d at 1155 (quoting 8 U.S.C. § 1154(b)). However, "[v]irtually no government

benefit is available to individuals without a requirement that certain conditions are met." *Ching*, 725 F.3d at 1156. "[R]egardless of the strength of the current marriage, 'no petition shall be approved' if USCIS determines that the noncitizen spouse *previously* entered into a marriage 'for the purpose of evading the immigration laws.'" *Zerezghi*, 955 F.3d at 804 (quoting 8 U.S.C. § 1154(c)). This is true "[e]ven if [the] current marriage is unquestionably bona fide." *Zerezghi*, 955 F.3d at 804 (quoting *Matter of Kahy*, 19 I. & N. Dec. 803, 805 n.2 (BIA 1988)). This requirement is also "mandatory, not discretionary: If the noncitizen committed marriage fraud at any time in the past, 'no petition shall be approved' at any time in the future." *Zerezghi*, 955 F.3d at 804 (citing 8 U.S.C. § 1154(c)). "A USCIS regulation provides: 'The director will deny a petition for immigrant visa classification filed on behalf of any alien for whom there is *substantial and probative evidence* of' an attempt or conspiracy 'to enter into a marriage for the purpose of evading the immigration laws.'" *Zerezghi*, 955 F.3d at 805 (quoting 8 C.F.R. § 204.2(a)(1)(ii)) (emphasis added). While the initial burden of proof falls on the Government, evidence of marriage fraud and the issuance of a NOID shifts the burden to the petitioner. *Zerezghi*, 955 F.3d at 808 (citing *Matter of Kahy*, 19 I. & N. Dec. 803, 806–807 (BIA 1988)). The petitioner must then rebut the evidence or the petition is denied. *Id.*

In sum, "[i]mmediate relative status for an alien spouse is a right to which citizen applicants are entitled as long as the petitioner and spouse beneficiary meet the statutory and regulatory requirements for eligibility." *Id.* David is thus "'entitled to the protections of due process' in insuring that the government determination of ineligibility was properly made." *Zerezghi*, 955 F.3d at 808 (quoting *Ching*, 725 F.3d at 1156). The record reveals, however, he received all the process he was due.

As to whether additional process was due, the Court considers three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function

> involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Here, the factors favor the Government.

### i. Private Interest Factor

The Government argues that Duc is not at imminent risk for deportation, because as alleged in the Complaint, Duc's removal proceedings were closed in March 2015 and Duc currently resides with David in Oceanside, California. Motion at 7. The Yocoms counter that the Government acknowledges Duc is the subject of administratively closed removal proceedings, and that DHS "may move an Immigration Court to recalendar those proceedings at any time." Oppo. at 15. The Court agrees with the Government. The Complaint clearly alleges that in March 2015, "[a]n immigration judge administratively closed Duc Yocom's removal proceedings," and that Duc and David currently reside in Oceanside California. Compl. at 2, ¶ 4; 10, ¶ 32.

The Yocoms rely on *Ching* and *Zerezghi*, but in both of those cases, removal was imminent. *Ching*, 725 F.3d at 1157; *Zerezghi*, 955 F.3d at 810. *Ching* and *Zerezghi* further reasoned that "[t]he right to marry and to enjoy marriage are unquestionably liberty interests protected by the Due Process Clause," and "[t]he right to live with and not be separated from one's immediate family is 'a right that ranks high among the interests of the individual' and that cannot be taken away without procedural due process." *Zerezghi*, 955 F.3d at 810 (quoting *Ching*, 725 F.3d at 1157). Here, removal proceedings were closed several years ago, establishing that at this point, removal is not imminent. Because David and Duc reside in Oceanside, California—and removal is not imminent—the rationale in *Ching* and *Zerezghi* does not apply with equal force here. *See also Shashlov v. Sessions*, No. 2:17-cv-02166-JFW-KS, 2017 WL 6496440, at *5 (C.D. Cal. Dec. 4, 2017) (holding the private interest at stake was significantly less than in *Ching*, because the individual was not in removal proceedings). Accordingly, the Court finds that in this case, the private interest factor does not favor the Yocoms.

ii. Risk of Erroneous Deprivation Factor

In *Ching*, the Ninth Circuit held the "risk of an erroneous finding that a prior marriage was fraudulent is high in cases where an ex-spouse is relied upon for evidence that the previous marriage was fraudulent." 725 F.3d at 1157–58. The Court explained that "[m]any ex-spouses could be motivated by 'malice, vindictiveness, ... or jealousy' . . . . [and] [t]hese nefarious motivations are even more likely if the marriage (and subsequent divorce) were bona fide." *Id.* at 1158. There, the USCIS officers went to the ex-spouse's home to solicit a six-sentence statement that the marriage was fraudulent—the BIA's conclusion was based entirely on this statement. *Id.* at 1158. There was also extensive evidence that the marriage was not fraudulent. *Id.*

Although there are parallels to *Ching*, this case is easily distinguishable. The USCIS Director and BIA relied on more than T.L.'s sworn statement—*Duc himself provided a sworn statement indicating the marriage was a fraud*.[4] The BIA took note of both Duc and T.L.'s statements and concluded that they "raised questions about whether their marriage was fraudulent." Ex. E to Compl. at 82–83. At this point, the burden was on David to show Duc's marriage to T.L. was bona fide. The BIA found that the evidence submitted was insufficient to show that Duc and T.L.'s marriage "was not intended to circumvent the immigration laws." *Id.* at 83. The BIA explained that the evidence respecting Duc's marriage to T.L included "a copy of a joint Discover card, a joint car title, copies of some pictures, and a marriage license." *Id.* The BIA then stated that "the couple lived at separate addresses, did not have children, and did not submit sufficient evidence to show that they combined their financial assets and liabilities." *Id.* As such, the BIA held that "[t]he petitioner has not satisfied his burden to show that the beneficiary's first marriage was not fraudulent and that he and [T.L.] intended to establish a life together at the time of their marriage." *Id.*

Although the USCIS and BIA relied primarily on written evidence, which increases

---

[4] The Court considers all documents attached to the Complaint, as well as admissions therein. *See Ritchie*, 342 F.3d at 908.

the risk of erroneous deprivation, *see Ching*, 725 F.3d at 1158, the Complaint here does not allege what evidence David and Duc would have obtained by cross-examining T.L. or the USCIS officer. Essentially, the Yocoms do not allege the probative value of this evidence, *i.e.*, that T.L. was likely to recant her previously sworn statement, or that if she had, the outcome would have been different. In *Ching*, the petitioner submitted a declaration describing intimate details of the marriage, from pillow talk to a description of her spouse's underwear to the marriage's eventual end. 725 F.3d at 1153. There was also more evidence of the marriage's legitimacy, including substantial bona fides and a previous statement by the ex-spouse that the couple "truly loved each other." *Id.* However, the BIA relied solely on the ex-spouse's subsequent statement that the marriage was a fraud and therefore, there was an increased risk of an erroneous deprivation of the petitioner's interest. *Id.* at 1158.

Here, there is no additional, conflicting statement by Duc's ex-spouse, T.L. Duc's alleged reasoning for signing his statement was embarrassment over his sexuality, but the record does not reflect why T.L. would sign an untrue statement. The Yocoms could have obtained a declaration from T.L. or submitted evidence trying to explain why T.L. would have lied. Even if the officer drafted the statements, *see* Compl. at 12, ¶ 40, T.L. and Duc signed the statements attesting to their truthfulness. There is also no indication that T.L. acted out of malice or jealousy. It would therefore be reasonable to scrutinize or call into question any future, contradictory signed statements or declarations from Duc or T.L.

There are also no allegations that the Yocoms sought a hearing to cross-examine witnesses in response to the Amended NOID. The Complaint simply alleges that David responded to the Amended NOID with Duc's sworn declaration and other documents indicating that Duc felt compelled to marry T.L. to appease his family. However, this was not enough evidence to overcome the prior sworn statements. Again, Duc's declaration stated his supposed reasons for marrying T.L., but these reasons did not support the conclusion that the marriage was legitimate. Duc simply provided an alternative reason for marrying T.L., after which the BIA still found the marriage was fraudulent.

Overall, despite Duc's allegation, based on the entire Complaint and documents attached thereto, there was substantial and probative evidence disclosed before the hearing that Duc did not marry T.L. with the intention to establish a life together.  Unlike in *Zerezghi*, the Yocoms were told of all the information informing the Amended NOID and therefore, had a chance to refute the evidence. *See Zerezghi*, 955 F.3d at 812 ("Put simply, USCIS's statement did not allow the couple to know what to investigate or what to rebut against.").  The Yocoms knew what evidence was being used to support the Government's position[5] and had the opportunity to further develop the record.  Due process was satisfied.

Reading the allegations in the light most favorable to the Yocoms, the Court finds this factor weighs against them.  The USCIS and BIA relied on primarily written evidence and statements made during interviews, which increases the risk for error.  At the same time, *T.L.'s and Duc's own sworn statements indicated that his marriage to T.L. was fraudulent*, and little evidence—aside from Duc's self-serving declaration—was submitted to establish the legitimacy of that marriage.  The Yocoms had ample opportunity to gather additional statements and evidence to try to prove legitimacy.

      iii.     <u>Government Interest Factor</u>

In *Ching*, the Ninth Circuit weighed the fiscal and administrative burdens of additional procedure against the government's "substantial interest in preventing marriage fraud . . . ." 725 F.3d at 1158.  The *Ching* Court held that an additional hearing "would entail minimal cost to the government," and that the process sought in that setting was "guaranteed to aliens in removal proceedings . . . ." *Id.* (citing 8 U.S.C. § 1229a(b)(4)). However, as explained above, the Complaint does not indicate that the Yocoms ever sought an additional hearing or requested an opportunity to cross-examine T.L. or the USCIS officer, and Duc is not currently in removal proceedings.  Requiring the Government to

---

[5]    Based on the Complaint, it appears Duc knew the Government would use this evidence even before the Amended NOID was issued.  During the 2018 interview with USCIS, Duc discussed his supposed intentions for marrying T.L. Compl. at 10–11, ¶ 37. The Amended NOID was issued after the interview.

hold an additional hearing allowing for cross-examination of multiple witnesses would be fiscally and administratively burdensome, as the Yocoms have already had an opportunity to provide additional evidence. *See Shashlov*, No. 2:17-cv-02166-JFW-KS, 2017 WL 6496440, at *5 (holding that "requiring cross-examination would unnecessarily burden the Government.").

### B. Administrative Procedure Act

The Government reserved the right to challenge the Yocoms' APA claim, *see* Motion at 2 n.1, but did not make specific arguments respecting this claim. However, given the record set forth in the Yocoms' Complaint, the Court **DISMISSES** *sua sponte* any claim made under the APA.

First, the Court questions its jurisdictional ability to review the APA claim, given that Duc is not currently in removal proceedings and the Yocoms reside together in Oceanside, California. David has therefore, not been deprived of his Due Process interest and any potential deprivation is not imminent. Furthermore, as held in *Ching*, "there is no statutory right of cross-examination in I-130 visa adjudications." 725 F.3d at 1154. Although an opportunity to cross-examination witnesses is available during removal proceedings, "visa petitions are distinct from removal proceedings." *Id.* (citing *Elbez v. I.N.S.*, 767 F.2d 1313, 1314 (9th Cir. 1985). As such, the Court finds that it lacks jurisdiction to hear the Yocoms' APA claim.

Second, the review of a BIA "decision to impose a marriage-fraud penalty" can be set aside only if "the BIA's decision . . . is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Zerezghi*, 955 F.3d at 807 (quoting 5 U.S.C. § 706(2)(A)). For all the reasons stated above, the Court cannot conclude that the BIA's decision was arbitrary, capricious, or an abuse of discretion.

Despite Duc's after the fact declaration and allegations of officer misconduct, both Duc and T.L. signed sworn statements indicating the marriage was a fraud. The BIA was in the best position to weigh the evidence and was under no obligation to believe Duc's subsequent interview statements and declaration—statements that directly controverted his

prior sworn statement. Not only did the Yocoms have the opportunity to rebut the statement during their 2018 interviews (and attempted to do so), but they had another opportunity to submit evidence after David was issued the Amended NOID. Simply put, the evidence submitted in response to the Amended NOID was insufficient to overcome Duc and T.L.'s 2013 sworn statements. The Court is able to evaluate this evidence at the motion to dismiss stage because it was attached to the Complaint and is not being weighed against contested evidence outside the Complaint. In light of the reviewable evidence, the Court finds no plausible claim under the APA. *See supra* Part IV.A.ii (analyzing the BIA decision).

### C.     Leave to Amend

Based on the documents incorporated by reference in the Complaint, the Court concludes that the Yocoms cannot, in good faith, state a plausible Due Process or APA claim for relief. Therefore, providing leave to amend would be an exercise in futility. In addition, although the Yocoms request leave to amend in a footnote, they do not state how any amendment could cure the deficiencies in their claims. *See* Oppo. at 15 n.5. Accordingly, the Court **DENIES** leave to amend. *See Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross Blue Shield of Illinois*, No. CV 18-3866-RSWL-JPR, 2019 WL 954780, at *9 (C.D. Cal. Feb. 27, 2019) (rejecting the plaintiff's allegations of contradiction and denying leave to amend because "any amendment would likely be futile . . . .").

### V.     CONCLUSION

For the above reasons, the Court **GRANTS** the Government's Motion to Dismiss and **DISMISSES** the Complaint in its entirety, *with prejudice*.

IT IS SO ORDERED.

Dated: March 10, 2023

HON. ROGER T. BENITEZ
United States District Judge